UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAYED MOHSEN ZAHRAII,<br>1709 Wilmart Street,<br>Rockville, MD 20852;<br><br>    Plaintiff,<br><br>    vs.<br><br>UPTOWN FLOOR & HOMES<br>DESIGN, INC., also known as<br>UPTOWN FLOORS & HOME<br>REMODELING, INC.,<br>also known as ESFAHAN CARPET &<br>ORIENTAL RUG, INC.,<br>4477 Connecticut Avenue, NW,<br>Washington, DC 20008;<br><br>    and,<br><br>FARHAD GOLCHIN,<br>2950 Van Ness Street, NW,<br>Washington, DC 20008;<br><br>    and,<br><br>FARZAD GOLCHIN,<br>1711 Benning Road, NE, Apt. F-22,<br>Washington, DC 20002;<br><br>    Defendants. | Civil Action No. 07-_____ |

## COMPLAINT

Plaintiff, Sayed Mohsen Zahraii, for his complaint, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for battery, negligence, intentional infliction of emotional distress, and *respondeat superior* arising from defendants Farzad Golchin's and Farhad Golchin's beating of plaintiff at Uptown Floor & Home Designs, Inc., a store owned by Farhad Golchin.

2.  Plaintiff seeks damages against defendants Uptown Floor & Homes Design, Inc. ("Uptown Floor"), Farhad Golchin, and Farzad Golchin for partial permanent hearing loss and tinnitus as well as other physical and psychiatric injuries he sustained as a result of defendants' assault, battery, and intentional infliction of emotional distress upon plaintiff.

## JURISDICTION AND VENUE

3.  This action arises under District of Columbia law.

4.  The Court possesses diversity jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332(a)(1), because plaintiff and all defendants are citizens of different states and the amount in controversy exceeds $75,000.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all defendants reside in the District of Columbia and all of the events and omissions giving rise to plaintiff's claims occurred in the District of Columbia.

## THE PARTIES

6.  Plaintiff Sayed Mohsen Zahraii is a citizen of the State of Maryland, residing at 1709 Wilmart Street, Rockville, Maryland 20852. Plaintiff is 47 years of age and is married with two young children. At all relevant times, plaintiff was an employee of American Telephone & Communications, Inc. ("American Telephone").

7.  Defendant Farhad Golchin (hereinafter "Owner") is a citizen of the District of Columbia, residing at 2950 Van Ness Street, NW, Washington, DC 20008. Mr. Golchin is the sole owner of Uptown Floor.

8.  Defendant Farzad Golchin (hereinafter "Employee") is a citizen of the District of Columbia, residing at 1711 Benning Road, NE, Apt. F-22, Washington, DC 20002. Employee is the younger brother of Owner.

9. At all relevant times, Employee was an employee or agent of Uptown Floor and Owner, constituting a principal-agent relationship for *respondeat superior* purposes. At all relevant times, Owner was an owner or agent of Uptown Floor, constituting a principal-agent relationship for *respondeat superior* purposes.

10. Uptown Floor is a District of Columbia corporation located at 4477 Connecticut Avenue, NW, Washington, DC 20008. Uptown Floor, solely owned by Owner, is in the business of selling carpets, rugs, and upholstery. Uptown Floor was formerly known as Esfahan Carpet & Oriental Rug, Inc.

11. Park & Shop is a District of Columbia limited liability company located at 2828 Connecticut Avenue, NW, Washington, DC 20008. Park & Shop is the owner of the building located at 4477 Connecticut Avenue, NW, Washington, DC 20008, and the commercial landlord of Uptown Floor.

## FACTUAL ALLEGATIONS

12. On or about January 27, 2005, Owner engaged the services of plaintiff and his business associate at American Telephone, Masoud Mahjoub, to install a paging system at Uptown Floor, then known as Esfahan Carpet & Oriental Rug, Inc.

13. On or about October 28, 2005, American Telephone completed the cabling for the paging system at Uptown Floor. Plaintiff sent invoices to Mr. Golchin requesting payment for American Telephone's installation of the cabling at Uptown Floor. However, Owner refused to pay for the services rendered.

14. On or about May 9, 2006, Owner telephonically requested plaintiff and his business associate, Mr. Mahjoub, to come to Uptown Floor to discuss the unpaid invoices pertaining to American Telephone's installation of the paging system.

3

15. Pursuant to Owner's request, plaintiff went to Uptown Floor on May 10, 2006 to discuss the unpaid invoices. Owner and his brother, Employee, were present at the meeting. Plaintiff's business associate, Mr. Mahjoub, telephonically participated in the meeting. The parties discussed the unpaid invoices for approximately 45 minutes but could not reach an agreement.

16. Subsequently, plaintiff stood up and walked toward the exit door of Uptown Floor. As he got close to the exit, standing approximately 10 feet from Owner and Employee, plaintiff turned around and stated to Owner, "I'll see you in court."

17. Immediately thereafter, Owner and Employee rushed toward plaintiff as he was about to exit their store. Standing approximately three inches from plaintiff, Owner pointed his finger at plaintiff's eye while threateningly shouting at plaintiff. Shocked at what had transpired, plaintiff requested Owner to move his finger away from plaintiff's eye. Owner refused to do so.

18. Employee, Owner's brother, who was standing to the left of plaintiff, then unexpectedly punched plaintiff on his left ear and adjacent areas of his head with great force. Plaintiff was wearing a "Blue Tooth" cellular telephone device on his left ear at the time. The Blue Tooth worn by plaintiff on his left ear instantly flew to the ground and plaintiff cried aloud in agony from the punch. Mr. Mahjoub heard plaintiff cry out, "They are beating me. They are beating me. Help! Help!"

19. Plaintiff attempted to call 911 with his cellular phone but was unsuccessful due to his disorientation, confusion, and missing Blue Tooth. Plaintiff then exited Uptown Floor in an attempt to call 911 from outside the store.

20. On the basis of information and belief, Uptown Floor's stockman witnessed the incident described in paragraphs 17-18 above but refused to inform the police what had transpired in fear of retaliation from his employer.

21.	After the punch, plaintiff went outside Uptown Floor and attempted to call 911 from his cellular phone with no success. Plaintiff then walked towards the Franklin Montessori School, an establishment adjacent to Uptown Floor. A female employee of the Franklin Montessori School witnessed plaintiff holding his ear and crying for help. In his panicky and disoriented state, plaintiff requested the employee of the Franklin Montessori School to call 911.

22.	As he was waiting for the police to arrive outside the row of stores adjacent to Uptown Floor, Owner came toward plaintiff and screamed "I'm talking to you." Plaintiff stated to the Owner, "Stay away from me." Similarly, witnesses inside the Franklin Montessori School signaled Owner via hand movements to go away. Plaintiff continued to call 911 with his cellular phone and finally got through an operator who instructed plaintiff to stay on the curbside of the street and wait for the arrival of Emergency Services. As plaintiff was awaiting the arrival of Emergency Services on the curbside of the street in front of Uptown Floor, Employee yelled at plaintiff in a threatening voice: "You have not had enough of a beating. I will beat you up more."

23.	After he was punched at Uptown Floor, plaintiff noticed his heart beating extremely fast, his mouth dry, his legs numb, a sensation of needles running through his arms, difficulty breathing, and a ringing noise in his left ear. The District of Columbia Fire Department first arrived at the scene, providing plaintiff with emergency medical services. The Firefighters advised plaintiff to calm down, as he was experiencing a panic attack. Thereafter, an ambulance arrived at the scene. The emergency medical technicians from the ambulance took plaintiff's vital signs and similarly advised him to calm down because his heart rate was high and he was experiencing a panic attack.

24.  Officer Fisher of the District of Columbia Police Department subsequently arrived at the scene. Officer Fisher was unable to properly interview plaintiff because he could not communicate due to his expressive aphasia, stuttering, confusion and panic attack. Officer Fisher attempted to interview witnesses at Uptown Floor. On the basis of information and belief, plaintiff avers that Owner, Employee, and the stockman at Uptown Floor misinformed Officer Fisher concerning what had transpired at the incident. As plaintiff was unable to effectively communicate with Officer Fisher, the District of Columbia Police Department did not arrest defendants.

25.  Plaintiff was subsequently taken to Sibley Memorial Hospital ("Sibley") where he was diagnosed with head injuries, blunt trauma, and a panic attack. The medical records from Sibley indicate that plaintiff complained of being "hit on the head by fist," suffering from "speech change (stuttering)," and "tingling of ear." The attending physician at Sibley, Michael Fitzgerald, M.D., diagnosed plaintiff with an "acute anxiety reaction S/P blunt head trauma" and prescribed him with Ativan, an anti-anxiety medication. Plaintiff was released from Sibley after a CAT scan of his head was taken. Plaintiff was advised to have a follow-up visit with his primary physician within 2-3 days.

26.  As a direct result of Employee's punching of plaintiff's head and left ear with great force, plaintiff suffered partial permanent hearing loss and tinnitus in his left ear. Pursuant to the recommendation of his treating physician, Mark Dettelbach, M.D. (an ear specialist), plaintiff now wears a hearing aid on his left ear due to the partial permanent hearing loss he suffered as a result of the blow to his head. The injuries suffered by plaintiff described in this paragraph were proximately caused by Owner's, Employee's, and Uptown Floor's negligence and egregious conduct described in paragraphs 17-18 and 22 above.

6

27.     As a direct result of Employee's punching of plaintiff's head and left ear and continued threats to beat plaintiff up, and Owner's pointing his finger at plaintiff's eye as described in paragraphs 17-18 above, plaintiff suffered vertigo, head injuries and blunt trauma, a panic attack, expressive aphasia, inability to properly speak, stuttering for several days, recurring headaches, and insomnia. The injuries suffered by plaintiff described in this paragraph were proximately caused by Owner's, Employee's, and Uptown Floor's negligence and egregious conduct described in paragraphs 17-18 and 22 above.

28.     Employee's and Owner's conduct described in paragraphs 17-18 and 22 above directly resulted in further deterioration of plaintiff's pre-existing anxiety and depression, necessitating a doubling of plaintiff's anti-anxiety and anti-depression medication, Lexapro, and increased psychiatric therapy directed by plaintiff's psychiatrist. Plaintiff's deteriorating depression, anxiety, and substantially increased intake of anti-depressants and anti-anxiety medications have affected and continue to daily affect plaintiff's personal and social relationships and his outlook on life. The injuries suffered by plaintiff described in this paragraph were proximately caused by Owner's, Employee's, and Uptown Floor's negligence and egregious conduct described in paragraphs 17-18 and 22 above.

29.     Owner's and Employee's egregious conduct described in paragraphs 17-18 and 22 above was intentional and malicious, warranting the imposition of punitive damages.

30.     At all relevant times, plaintiff was an invitee of defendants Uptown Floor, Owner, and Employee, as plaintiff was Uptown Floor's vendor and specifically requested by Owner to come to Uptown Floor to resolve an unpaid invoice on the date of the incident. Defendant Uptown Floor is liable for Owner's and Employee's conduct based on principles of *respondeat superior*. Employee was acting within the scope of his employment or agency with Uptown Floor when he

punched plaintiff's head and left ear and threatened to beat him up more. Owner was similarly acting within the scope of his agency with Uptown Floor when he pointed his finger at plaintiff's eye while screaming at him.

31. As a result of defendants' acts and omissions, plaintiff has suffered partial permanent hearing loss and tinnitus in his left ear, as well as other physical and psychiatric injuries; plaintiff has incurred and will continue to incur significant medical expenses; and plaintiff has suffered compensatory and special damages in an amount to be determined at trial, which amount exceeds $900,000.

32. Shortly after the May 10, 2006 incident, Owner filed a claim with Allstate Insurance Company, the liability insurance carrier for Uptown Floor. On the basis of information and belief, plaintiff avers that Owner's claim was filed with Allstate Insurance even though plaintiff had not made a demand to Owner at the time, evincing Owner's acknowledgement of defendants' liability for the incident.

33. On January 30, 2007, Allstate Insurance Company denied the claim before a demand packet had been submitted by plaintiff's counsel to Allstate Insurance. By prematurely denying the claim without giving plaintiff an opportunity to present his evidence, Allstate Insurance circumvented the routine procedures in resolving commercial liability claims. Allstate Insurance denied the claim on the basis that "the incident was not a result of any negligence on behalf of our insured."

## COUNT ONE

### (Battery)

34. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

35. Owner's intentional pointing of his finger at plaintiff's eye, and Employee's intentional punching of plaintiff's left ear and head, as described in paragraphs 17-18 and 22 above, resulted in harmful and offensive bodily contacts on plaintiff to which he did not consent, amounting to battery.

36. These acts of battery proximately caused plaintiff injuries, including partial permanent hearing loss, tinnitus, vertigo, head injuries, blunt trauma, panic attack, expressive aphasia, stuttering, deteriorating depression and anxiety, recurring headaches and insomnia as more fully described in paragraphs 25-28 above.

37. Defendants are liable to plaintiff for damages arising from their battery. Owner has *respondeat superior* liability for Employee's battery upon plaintiff, which was done within the course of Employee's employment or agency and to further Owner's interests. Similarly, Uptown Floor has *respondeat superior* liability for Owner's and Employee's battery upon plaintiff which were done within the course of their employment or agency and to further Uptown Floor's interests in not tendering payments to plaintiff for American Telephone's installation of a paging system at Uptown Floor.

## COUNT TWO

### (Negligence)

38. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

39. Defendants Uptown Floor, Owner, and Employee owed a duty of care to plaintiff. This duty required defendants to exercise reasonable care in ensuring that plaintiff would not be injured on the premises of Uptown Floor as a result of the acts and omissions of defendants.

40. Defendants and each of them failed to exercise reasonable care in ensuring that plaintiff would not be injured at Uptown Floor by the acts and omissions of defendants, their employees, and agents.

41. The injuries suffered by plaintiff described in paragraphs 25-28 above were proximately caused by defendants' failure to exercise the requisite degree of care described above. Defendants and each of them are therefore liable to plaintiff for the damages he sustained as a result of the injuries described in paragraphs 25-28 above.

## COUNT THREE

### (Negligent Supervision)

42. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

43. Defendants Uptown Floor and Owner owed a duty of care to plaintiff. This duty required Owner and Uptown Floor to exercise reasonable care in supervising their employees to ensure that they would not assault, batter, or otherwise cause injury to plaintiff when invited to or visiting Uptown Floor.

44. Defendants Uptown Floor and Owner failed to exercise reasonable care in supervising Employee as their employee or agent when they (a) encouraged him to assault and batter plaintiff at Uptown Floor, (b) failed to prevent him from assaulting and battering plaintiff at Uptown Floor, and (c) failed to instruct him to leave the premises or not to commit tortuous conduct toward plaintiff when he was invited to Uptown Floor to settle a disputed debt.

45.    It was reasonably foreseeable that Employee would commit assault and battery upon plaintiff when he visited Uptown Floor at the request of Owner to settle a disputed debt. This is particularly so because defendants Uptown Floor and Owner knew or reasonably should have known that Employee used illegal narcotics and had a propensity toward violence

46.    As a direct result of defendants Uptown Floor's and Owner's failure to exercise reasonable care in supervising Employee as their employee or agent at Uptown Floor, plaintiff was assaulted and battered by Employee or otherwise injured through defendants' negligence at Uptown Floor. The injuries suffered by plaintiff described in paragraphs 25-28 above were proximately caused by defendants Uptown Floor's and Owner's failure to exercise reasonable care in supervising Employee.

## COUNT FOUR

### (Negligent Hiring and Retention)

47.    Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

48.    Defendants Uptown Floor and Owner owed a duty of care to plaintiff. This duty required Uptown Floor and Owner to exercise reasonable care in hiring and retaining employees who were drug-free and not violent toward plaintiff when invited to or visiting Uptown Floor.

49.    On the basis of information and belief, plaintiff avers that at all relevant times defendant Employee used illegal narcotics and had a propensity toward violence; defendant Owner knew or reasonably should have known that his brother used illegal narcotics and had a propensity toward violence; defendant Uptown Floor similarly knew or reasonably should have known that Employee used illegal narcotics and had a propensity toward violence.

50.    Nonetheless, defendants Uptown Floor and Owner hired and retained Employee as their employee or agent at Uptown Floor while fully aware or reasonably obligated to know of his

11

drug use and propensity toward violence. Defendants Owner and Uptown Floor therefore failed to exercise reasonable care in hiring and retaining Employee as their employee or agent at Uptown Floor.

51. Under these circumstances, it was reasonably foreseeable that Employee would commit assault and battery upon plaintiff when he was invited to Uptown Floor at the request of Owner to settle a disputed debt.

52. As a direct result of defendants Uptown Floor's and Owner's failure to exercise reasonable care in hiring and retaining Employee as their employee or agent at Uptown Floor, plaintiff was assaulted and battered by Employee at Uptown Floor. The injuries suffered by plaintiff described in paragraphs 25-28 above were proximately caused by defendants Uptown Floor's and Owner's failure to exercise reasonable care in hiring and retaining Employee.

## COUNT FIVE
### (Civil Aiding and Abetting)

53. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

54. Owner aided and abetted Employee in punching plaintiff's left ear and head by (a) encouraging Employee to exercise violence and brute force toward plaintiff following disagreement over a disputed bill, (b) pointing his finger at plaintiff's eye while Employee was punching plaintiff's head and left ear, and (c) continuing to verbally assault plaintiff after he had exited Uptown Floor.

55. These physical acts and verbal threats proximately caused plaintiff injuries as more fully described in paragraphs 25-28 above.

56. Owner is thus liable to plaintiff for damages arising from his aiding and abetting of Employee's battery and assault of plaintiff. Uptown Floor similarly has *respondeat superior*

liability for Owner's aiding and abetting of Employee in battering plaintiff, which was done within the course of Owner's employment or agency and done to further Owner's interests in not tendering payments to plaintiff for American Telephone's cabling of a paging system at Uptown Floor.

## COUNT SIX

### (Intentional Infliction of Emotional Distress)

57. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

58. Owner's intentional pointing of his finger at plaintiff's eye while verbally threatening him, and Employee's intentional punching of plaintiff's left ear and head and repeated threatening of plaintiff, including threats to beat plaintiff up more, as more fully described in paragraphs 17-18 and 22 above, caused severe emotional distress upon plaintiff as described in paragraphs 25-28 above. The aforementioned conduct of defendants Owner and Employee was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized society.

59. Owner has *respondeat superior* liability for Employee's intentional infliction of emotional distress upon plaintiff, which was done within the course of Employee's employment or agency and done to further Owner's interests. Similarly, Uptown Floor has *respondeat superior* liability for Owner's and Employee's intentional infliction of emotional distress upon plaintiff, which was done within the course of their employment or agency and to further Uptown Floor's interests in not tendering payments to plaintiff for American Telephone's installation of a paging system at Uptown Floor.

## DEMAND FOR JURY TRIAL

60. Plaintiff hereby demands trial before a jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief against defendants as follows:

(a) Judgment in favor of plaintiff and against all defendants for the above counts;

(b) Awarding plaintiff compensatory, special, and emotional distress damages in an amount to be determined at trial for the above counts, which amount exceeds $900,000;

(c) Awarding plaintiff punitive damages in the amount of $5,000,000 for Owner's and Employee's willful and malicious battery and intentional infliction of emotional distress upon plaintiff;

(d) Awarding plaintiff attorney's fees and costs (including expert witness fees) for prosecuting this action;

(e) Prejudgment and post-judgment interest on all of the above counts; and

(f) Awarding plaintiff such other and further relief as the Court may deem just and proper.

Dated: February 7, 2007

_____
Stefan Shaibani (DC Bar No. 490024)
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, DC 20036
Tel: (202) 862-4335
*Attorney for Plaintiff*

OF COUNSEL:
Anthony A. Fatemi (admitted in MD)
ANTHONY FATEMI, LLC
6701 Democracy Blvd., Suite 300
Bethesda, MD 20817
Tel: (301) 571-9350

JS-44
(Rev.1/05 DC)
Case 1:07-cv-00282-ESH   Document 1-2   Filed 02/07/2007   Page 1 of 2
CIVIL COVER SHEET
07-282
ESH

## I (a) PLAINTIFFS

Sayed Mosen Zahraii

## DEFENDANTS

Uptown Floor & Homes Design, Inc.;
Farhad Golchin; Farzad Golchin

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Montgomery, MD
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Washington, DC
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Stefan Shaibani, Esq.
Litigation Associate, PLLC
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036

CASE NUMBER 1:07CV00282
JUDGE: Ellen Segal Huvelle
DECK TYPE: Personal Injury/Malpracti
DATE STAMP: 02/07/2007

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
⊙ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ⊙ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

⊙ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☒ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes:
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*    OR    ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

|  |  |  |  |
|---|---|---|---|
| ○ **G.** *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ **H.** *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ **I.** *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ **J.** *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ **L.** *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ **M.** *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ **N.** *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Battery Action Filed Pursuant To Diversity Jurisdiction -- 28 U.S.C. 1391(b)

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $1,000,000+   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒   If yes, please complete related case form.

DATE February 7, 2007   SIGNATURE OF ATTORNEY OF RECORD /s/

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.